# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MICHELLE HAMMOND-BEVILLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3: 20-cv-00973** |
| | ) | **Judge Aleta A. Trauger** |
| **JEFF LANDIS, KATHY MORANTE,** | ) | |
| **RON CARTER, JASON SHARPE, and** | ) | |
| **CHEATHAM COUNTY, TENNESSEE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Before the court is plaintiff Michelle Hammond-Beville's Motion to Amend Complaint under Rules 15 and 20 of the Federal Rules of Civil Procedure. (Doc. No. 55.) Her proposed Second Amended Complaint ("SAC") is attached as an exhibit to the motion. (Doc. No. 55-1.) For the reasons set forth herein, the motion will be denied.

## I. BACKGROUND

Plaintiff Michelle Hammond-Beville has been employed as a police officer with the Metro Nashville Police Department ("MNPD") since 2005. She holds the rank of sergeant and, from 2016 until the events giving rise to her lawsuit, was assigned to the Office of Professional Accountability ("OPA"), a division of the MNPD tasked with investigating allegations of serious officer misconduct. (*Id.* ¶¶ 9, 10.)[1] Hammond-Beville filed her Complaint initiating this lawsuit in November 2020 (Doc. No. 1) and a first Amended Complaint ("FAC") in January 2021 (Doc. No. 16), asserting claims against Jeff Landis, formerly a deputy with the Sheriff's Office of Cheatham

---

[1] In the proposed SAC, Hammond-Beville states she was promoted to the rank of lieutenant in May 2022. (Doc. No. 55-1 ¶ 185.)

County, Tennessee, under 42 U.S.C. § 1983 for malicious prosecution in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution; against Cheatham County, as Landis' former employer, for vicarious liability for Landis' actions, under Tenn. Code Ann. § 8-8-302 (Count III); and against Kathy Morante, Jason Sharpe, and Ron Carter, all MNPD officers assigned to the OPA, asserting a common law claim for malicious prosecution (Count II).

Rather than answering the FAC, Morante, Sharpe, and Carter (the "MNPD defendants") filed a Motion to Dismiss the claim against them on the basis of qualified immunity. After this court denied their motion, the MNPD defendants took an interlocutory appeal. The Sixth Circuit affirmed approximately a year later. Once the mandate issued, the defendants answered the FAC, and the court scheduled an initial case management conference. Before that conference convened, however, the plaintiff filed her Motion to Amend Complaint and the proposed SAC. As a result, the initial case management conference has been continued, to be reset following disposition of this motion. Thus, although this lawsuit was filed almost two years ago, it is procedurally in its infancy, with no case management deadlines even having been set.

The malicious prosecution claims (under state and federal law) in the FAC are premised upon allegations that Landis and the MNPD defendants knowingly subjected Hammond-Beville to baseless criminal charges (Landis) and a baseless internal-affairs investigation (the MNPD defendants) on false charges of child abuse. In addition to those claims, the proposed SAC also states entirely new claims under Title VII of the Civil Rights Act of 1964 ("Title VII") for sex discrimination and retaliation against a new defendant, the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro").[2]

---

[2] The plaintiff identifies the putative defendant as the "Metropolitan Government of Nashville Davidson County, Tennessee" and, alternatively as the "Metropolitan Government of Nashville, Tennessee. (*See* Doc. No. 55, at 1; Doc. No. 55-1, at 1, 2.) The court takes judicial

In support of the new Title VII claims, the proposed SAC incorporates new factual allegations, including allegations regarding the MNPD's failure to promote Hammond-Beville in 2017 (before the false allegations of child abuse arose in 2018) (SAC ¶¶ 84–95), as well as allegations that, during an OPA interview regarding the child abuse allegations, the plaintiff suffered disparate treatment, insofar as she was "subjected to degrading, invasive questions that were not germane to the investigation and that would not have been asked of a male officer" (SAC ¶ 137). The plaintiff also alleges that, while the OPA investigation was still pending and she remained on decommissioned status, she was assigned to demeaning tasks that male officers were not required to perform. She also claims that she did not receive hazard pay when required to interact with the public during the COVID-19 pandemic, though a male officer in the same job received hazard pay. (SAC ¶¶ 176–77.) When the charges against her were finally dismissed without a disciplinary hearing (after they had been pending for more than two and one-half years), the plaintiff, rather than being restored to the position she had held prior to being charged, as is "typically what MNPD does for male officers who have been exonerated," the plaintiff was placed in a much less desirable patrol position and required to work weekends, even though she had "previously earned the privilege of having weekends off." (SAC ¶¶ 181–83.)

Aside from the new allegations, both the FAC and the SAC include allegations that, for several years leading up to the events at issue in this lawsuit, the OPA had a "*de facto* practice of tending to protect MNPD staff who held the favor of the MNPD administration, while unfairly prosecuting those officers who did not have such favor" and that the officers thus protected by the OPA "have disproportionately been white males, while the officers whom OPA has unfairly

---

notice that the municipality's legal name is the Metropolitan Government of Nashville and Davidson County, Tennessee, as set forth in § 1.01 of the Metro Charter. https://www.coj.net/city-council/docs/consolidation-task-force/2014-01-09-nashvillecharter.aspx.

prosecuted have disproportionately been those with other demographic backgrounds." (Doc. No. 16 ¶¶ 51–52; *see also* SAC ¶¶ 52–53.) The plaintiff also alleges that, during her tenure with OPA, she "spoke out against the practice of protecting politically favored officers and the practice of unfairly prosecuting disfavored officers." (Doc. No. 16 ¶ 53; *see also* SAC ¶ 54.) The plaintiff claims that the MNPD defendants "developed a bias against [her] due to her protests against OPA's practices." (Doc. No. 16 ¶ 54; *see also* SAC ¶ 55.)

Under "Count IV" of the SAC, for Title VII sex discrimination, the plaintiff points to the new allegations regarding aspects of her employment while she was decommissioned and after she was reinstated, while also referencing the long-standing allegations that she was falsely charged with misconduct, decommissioned for over two years while those charges were pending, and pressured to resign as evidence of sex discrimination. (SAC ¶ 206.)

In support of "Count V," for retaliation in violation of Title VII, the plaintiff claims that she was subjected to retaliation for "protesting the disparate treatment of herself and other MNPD employees who were not members of the favored demographic class—white males." (SAC ¶ 211.)." (SAC ¶ 211.) The retaliatory conduct she allegedly suffered is the same conduct to which she points as evidence of sex discrimination: "being false charged with misconduct, de-commissioned for over two years, pressured to resign, deprived of hazard pay that was made available to similarly situated male employees, forced to perform undesirable tasks that were not forced on similarly situated male employees, and ultimately returned back to Patrol duty with undesirable days off after she was finally exonerated." (SAC ¶ 212.)

In her motion, the plaintiff asserts that the joinder of the new claims against Metro is appropriate, because the claims "rely heavily—though not exclusively—on Metro's treatment of Plaintiff in response to the false child abuse allegations already at issue in the case." (Doc. No. 55,

at 1.) Defendants Landis and Cheatham County have taken no position on the Motion to Amend. The MNPD defendants oppose it on the basis that: (1) the request to amend is futile, because the plaintiff does not plead administrative exhaustion of her Title VII claims; and (2) even if she did exhaust them, the Title VII claims do not arise from the same transaction or occurrence underlying the claims against the current defendants, and the "elements, standards, and evidence involved in malicious prosecution and Title VII claims are starkly different and will require the application of a different set of facts to different legal principles." (Doc. No. 59, at 3.) In her Reply, the plaintiff argues that (1) she has exhausted her Title VII claims, though she was, at the time the Reply was filed, still waiting for the EEOC to issue a Notice of Right to Sue; and (2) the defendants misconstrue the basis for her claims, and "the facts supporting the Title VII claim are inextricably intertwined with the existing case." (Doc. No. 61, at 2.) Four days after filing her Reply, Hammond-Beville gave notice that she had received her "Right to Sue" letter from the U.S. Department of Justice. (Doc. Nos. 62, 62-1.)

## II.     STANDARD OF REVIEW

When the time for amending a pleading "as a matter of course" under Rule 15(a)(1) has expired, as it indisputably has in this case, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "[T]he rule embodies a 'liberal amendment policy.'" *Brown v. Chapman*, 814 F.3d 436, 442–43 (6th Cir. 2016) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)).

Despite this liberal policy, the denial of a motion to amend may be appropriate when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.* at 443 (quoting *Foman v. Davis*,

371 U.S. 178, 182 (1962). A proposed amendment is considered futile if it could not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018).

In addition, however, a motion to amend under Rule 15(a) in which the moving party seeks to join a new party should be denied unless the moving party also satisfies "the more specific permissive joinder provisions" of Rule 20(a). *Dottore v. Nat'l Staffing Servs., LLC*, No. 3:06CV01942, 2007 WL 21147668, at *3 (N.D. Ohio July 20, 2007) (citing *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001); *Desert Empire Bank v. Ins. Co.*, 623 F.2d 1371, 1374 (9th Cir. 1980); *see also, e.g.*, *Young v. Braum's, Inc.*, No. 5:19-cv-00161-RWS-CMC, 2020 WL 11626227, at *2 (E.D. Tex. Nov. 19, 2020) (same); *Kunin v. Costco Wholesale Corp.*, No. 10-11456, 2011 WL 6090132, at *3 (E.D. Mich. Dec. 7, 2011) (same).

Rule 20(a) governs the joinder of new parties in an action, stating in relevant part that defendants may be joined in a single action if

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

The purpose of Rule 20(a) is to promote judicial economy and trial convenience. *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 230 (M.D. Tenn. 2001) (citing *Mosely v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)). The rule embodies the "impulse . . . toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). "[P]ermissive joinder rests with the sound discretion of the

district court." *Ohio ex. rel. Fisher v. Louis Trauth Dairy, Inc.*, 856 F. Supp. 1229, 1239 (S.D. Ohio 1994).

## III.    DISCUSSION

### A.    Rule 15(a)

The MNPD defendants do not allege undue delay, bad faith, or a repeated failure to cure deficiencies by amendments previously allowed, nor do they make any supported allegations of undue prejudice.

As for futility, the defendants only argue that the plaintiff failed to allege exhaustion of her Title VII claims, because the plaintiff she did not show that she had been issued a Notice of Right to Sue by the EEOC. However, in response to the defendants' exhaustion argument, the plaintiff attached exhibits to her Reply, showing that she filed a timely charge with the EEOC and, after the expiration of 180 days, requested a request for a Notice of Right to Sue to the EEOC. The EEOC forwarded the request to the United States Department of Justice. The United States Department of Justice acknowledged receipt and finally, on July 26, 2022, issued the Notice of Right to Sue. (*See* Doc. No. 62-1.)

While it is clear that the exhaustion of administrative remedies—generally including receipt of a notice of right to sue—is a prerequisite to filing a Title VII lawsuit in federal court, the Supreme Court has recently recognized that, "[w]hether or not the EEOC acts on the charge, a complainant is entitled to a 'right-to-sue' notice 180 days after the charge is filed." *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1847 (2019) (citing 42 U.S.C. § 2000e–5(f)(1); 29 C.F.R. § 1601.28). And, while the Sixth Circuit has not expressly addressed the issue, those courts that have appear to have uniformly held that a plaintiff's "administrative remedies are deemed to have been exhausted . . . when she became entitled to such a letter." *Patterson v. Cty. of Fairfax*, C/A No. 94-1218, 1995 WL 3672, at *2 (4th Cir. Jan. 4, 1995); *Harris v. Garrett*, C/A No. 5:15-00606-FL,

2016 WL 11430731, at *3 (E.D.N.C. June 28, 2016) ("Because he not only requested such a letter but also because, at this juncture, he is entitled to one, any omission in failing to allege receipt of a right to sue letter or to attach it to the complaint is a deficiency that cannot be attributed to Harris. Consequently, these claims are not subject to dismissal for failure to exhaust administrative remedies."), *report and recommendation adopted as modified*, C/A No. 5:15-00606-FL, 2016 WL 5372783 (E.D.N.C. Sept. 26, 2016); *Kern v. Schuylkill Intermediate Unit 29*, No. 3:CV-08-1601, 2010 WL 235107, at *4 (M.D. Pa. Jan. 15, 2010) ("[W]hen faced with a situation where the EEOC has failed to issue the letter even though the 180-day deadline has expired, courts have allowed a plaintiff to maintain a Title VII action provided that she can show that she is entitled to the right-to-sue letter and has requested it." (collecting cases)).

Because the plaintiff was clearly entitled to a notice of right to sue and had requested one even before filing her Motion to Amend, and because the notice has now been issued, the defendants have not established that the Title VII claims are futile based on a failure to exhaust.

Insofar as the defendants claim prejudice relating to any delay in the proceedings, the court notes that the lack of progress in this case is due to the defendants' having taken an interlocutory appeal of the denial of their motion to dismiss on qualified immunity grounds. The delay and any resulting prejudice cannot be attributed to the plaintiff.

The court, in short, discerns no basis for denying the Motion to Amend under the standards generally applicable to Rule 15(a) motions.

### B.    Rule 20(a)(2)

The defendant argues that the Rule 20(a) requirements are not met in this case, first because the plaintiff's sex discrimination claim stems from her non-selection for a promotion in 2017—before the false child abuse claims arose—and because she does not allege that the individual MNPD defendants were involved in that decision. (Doc. No. 58, at 4.) That argument is mistaken,

as the plaintiff has clarified that her Title VII claims are not based on the events that took place in 2017, which are time-barred and unexhausted. She asserts that she includes that information as "illustrative facts." (Doc. No. 61, at 1.)

The defendants also contend, however, that "the elements, standards, and supporting evidence in state law malicious prosecution and federal Title VII employment claims are vastly different" and will involve "different witnesses, different facts that have nothing to do with the allegations of child abuse against the Plaintiff, and a wholly separate legal standard." (*Id.* at 5.) They argue that a jury would struggle to apply these different standards to different defendants. They also contend that the interests of judicial efficiency weigh against permitting the proposed amendment, because the new claims are brought more than two years after the lawsuit was initiated and, because they raise new claims against a new defendant, will "further complicate[] written and oral discovery" and will increase the time it will take to fully adjudicate the case. (*Id.* at 5–6.) They point to the likelihood of the need to bifurcate the trial.

In response, the plaintiff asserts that the facts central to her discrimination and retaliation claims include all of the acts in which the individual defendants engaged, as alleged in the FAC, and that these acts are inextricably intertwined with the other aspects of the alleged discrimination and retaliation, including the MNPD's treatment of her both while she was decommissioned and after the investigation terminated.

The court is not persuaded by the plaintiff's arguments. As set forth above, Rule 20(a)(2)'s first criterion is that the plaintiff assert a right to relief against all the defendants, including those she seeks to join, either "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). The plaintiff's proposed Title VII claims against Metro do not arise out of the "same transaction,

occurrence, or series of transactions or occurrences" as her claims against defendants Jeff Landis and Cheatham County, and they are only tangentially related to the claims against the MNPD defendants.

Moreover, subsection (B) of Rule 20(a)(2) further requires that some "question of law or fact common to all defendants will arise in the action." Regarding this criterion, under Tennessee law, to prevail on a claim for malicious prosecution, a plaintiff must establish that: "(1) the defendant instituted a prior action without probable cause; (2) the defendant brought such action with malice; and (3) the prior action was terminated in the plaintiff's favor." *Hill v. White*, 190 F.3d 427, 431 (6th Cir. 1999) (citing *Roberts v. Fed. Express Corp.*, 842 S.W.2d 246, 247–48 (Tenn. 1992)). "Any improper motive is sufficient to constitute malice when malicious prosecution is charged." *Kelley v. Tomlinson*, 46 S.W.3d 742, 746 (Tenn. Ct. App. 2000) (citing *Lawson v. Wilkinson*, 447 S.W.2d 369 (Tenn. Ct. App. 1969)). While "[i]ll will or personal hatred . . . would certainly be sufficient to establish malice," *id.*, malice may also be inferred merely "from the fact that a criminal prosecution was brought without probable cause." *Carter v. Baker's Food Rite Store*, 787 S.W.2d 4, 8 (Tenn. Ct. App. 1989) (citing *Lewis v. Williams*, 618 S.W.2d 299, 303 (Tenn. 1981)). Likewise, under federal law, a malicious prosecution claim requires a lack of probable cause for a criminal prosecution rather than a showing of actual malice. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010).

In this case, because there is no dispute that all underlying claims against Hammond-Beville were ultimately dismissed, the parties' primary focus in proving (or disproving) the malicious prosecution claims—against the MNPD defendants as well as Landis and Cheatham County—will be on whether there was probable cause to believe that the plaintiff was guilty of child abuse. The defendants' actual intentions have little bearing on that question. The Tennessee

courts, in fact, expressly recognize that allegations of malice cannot substitute for a showing that the underlying proceeding was not based on probable cause. *See Peoples Protective Life Ins. Co. v. Neuhoff*, 407 S.W.2d 190, 199 (Tenn. Ct. App. 1966) ("[T]he want of probable cause cannot be inferred from malice so as to render plaintiff liable for malicious prosecution. . . . [I]f there is reasonable cause to prosecute, the state of mind is immaterial.").

Under Title VII, on the other hand, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To prevail on a Title VII claim, the plaintiff must ultimately prove that she suffered *intentional* sex-based discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000) ("The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."). For the retaliation claim, the plaintiff will need to prove, among other things, that she engaged in conduct protected by Title VII and that she suffered adverse actions *because of* the protected conduct. *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015); 42 U.S.C. § 2000e-3(a). In other words, the elements of the Title VII claims do not overlap with the elements of the malicious prosecution claims, and the focus of Title VII claims will be on the motivation behind the alleged adverse actions. And, while the motivations of the MNPD defendants in pursuing the disciplinary charges against the plaintiff might have some bearing on the plaintiff's Title VII claims, those motivations are not particularly relevant in the malicious prosecution context, and Landis and Cheatham County are not implicated by the Title

VII claims at all.[3]

Because the elements of the claims do not overlap, and the presentation of the Title VII claims will require a substantial amount of evidence that is not relevant to the malicious prosecution claims and not remotely relevant to two of the defendants, permitting the plaintiff to assert wholly new Title VII claims against Metro, a new defendant, would unduly complicate the claims against the current defendants, unnecessarily lengthen the course of discovery and the scope of dispositive motions, and potentially confuse the jury.

In sum, while it is at least arguable that there are tangential questions of fact common to the MNPD defendants and Metro, that is not sufficient where other defendants are involved and the new claims asserted against Metro do not arise from any occurrence, facts or legal question in common with the claims against Landis and Cheatham County.

## IV.     CONCLUSION

For the reasons set forth herein, the court will, in the exercise of its discretion, deny the plaintiff's Motion to Amend to add new claims against a wholly new defendant. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

---

[3] The court further notes that it is unclear at this juncture to what extent the plaintiff herself might be prejudiced in her pursuit of the Title VII claims by evidence regarding the child abuse claims.